IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PAIRPREP, INC. d/b/a OPTICSML,  )<br>          Plaintiff,  )<br>  )<br>v.  )<br>  )<br>ASCENSION DATA AND ANALYTICS,  )<br>LLC, REIDPIN LLC, ROCKTOP PARTNERS,  )<br>LLC, URSUS HOLDINGS LLC,  )<br>          Defendants.  )  | Civil Action No. 2:21-cv-00057 |

**DEFENDANTS' MOTION TO DISMISS AND TO COMPEL ARBITRATION, OR, ALTERNATIVELY, TO STAY THIS MATTER, AND ORDER DISCOVERY**

COMES NOW Defendants, Ascension Data & Analytics, LLC, Reidpin LLC, Rocktop Partners, LLC and Ursus Holdings, LLC (hereinafter "Defendants"), and respectfully move this Court to dismiss this matter and compel arbitration pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, or, in the alternative, and while preserving jurisdictional defenses, stay this lawsuit and order discovery related to the arbitrability of Plaintiff's claims.

**I. STATEMENT OF ISSUES**

1. In this lawsuit, Plaintiff alleges theft of trade secrets for the first time 18 months after Plaintiff originally invoked arbitration and then participated in an unsuccessful American Arbitration Association ("AAA") mediation. Without waiving any jurisdictional defenses, Defendants seek the dismissal of Plaintiff's pending lawsuit and an order compelling Plaintiff and its founders, Sean M. Lanning ("Lanning") and John Michael Brozena, III ("Brozena") to participate in a pending AAA arbitration (the "Arbitration"). The

1

Arbitration should decide the arbitrability of the claims because Plaintiff consented to arbitration by originally invoking arbitration after signing an a Master Service Agreement ("MSA") containing an arbitration agreement evidencing the agreement to arbitrate arbitrability.[1] The arbitration proceeding involves Plaintiff's costly data breach of thousands of mortgage loan documents containing sensitive borrower data and, *inter alia*, Plaintiff's breach of the MSA arising from Plaintiff, Lanning, and Brozena's failure to develop an operational data input software program despite receiving $463,470 in payments. Alternatively, Defendants seek limited discovery from Plaintiff, Lanning, and Brozena related to the arbitrability of Plaintiff's claims.

## II. SUMMARY OF BACKGROUND FACTS AND RELIEF SOUGHT

2. Pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure and the Federal Arbitration Act ("FAA"), Defendants respectfully move this Court to dismiss Plaintiff's Complaint because the AAA has exclusive jurisdiction over this matter and all disputes must be arbitrated by the AAA in Dallas, Texas, pursuant to a binding arbitration agreement executed on February 6, 2017 by Plaintiff, Lanning, and Ascension Data & Analytics, LLC ("Ascension"), including arbitrability of the claims. Specifically, the MSA signed by Plaintiff, Lanning, and Ascension requires disputes to be arbitrated by the AAA in Dallas, Texas and provides:

> If the matter is not resolved within thirty (30) days after submission to mediation, the matter shall be resolved by binding arbitration administered and conducted under the Commercial Arbitration Rules of the American Arbitration Association and Title 9 of the United States Code. A judgment upon the arbitration award may be entered in any court having jurisdiction.

---

[1] The current arbitration is pending as AAA Case No. 01-20-0019-3242. The original AAA case no. assigned after Plaintiff invoked arbitration was 01-19-0002-4558. After the parties attended an unsuccessful AAA mediation, Ascension and its insurer, Indian Harbor Insurance Company, later filed a Demand for Arbitration on December 23, 2020 and joined Lanning and Brozena in their First Amended Demand for Arbitration on February 11, 2021. Eleven days later, on February 22, 2021, Plaintiff filed this lawsuit against Defendants.

2

> Any arbitration hearing shall take place in Dallas, Texas. The prevailing party shall be entitled to reimbursement from the other party for costs, filing fees, arbitration filing fees, reasonable pretrial, trial and appellate attorney's fees, witness fees, expert fees and arbitration panel fees. Nothing in this Section, however, shall prevent either party from seeking equitable relief from a court of competent jurisdiction for the other party's breach of the Confidentiality provisions of this Agreement.

*See* Exhibit A, p. 6, ¶ 8(d).

3. The MSA further provides that the MSA shall be governed by and construed in accordance with the laws of the State of Texas. Exhibit A, p. 7, ¶ 13.

4. Moreover, Plaintiff previously wrote to Ascension: "We continue to believe there is a path towards a negotiated solution. However, **Optics hereby triggers the Mediation and Arbitration provisions in the Agreement. See Agreement Section 8(c)-(d).**" *See* Exhibit B (emphasis added).

5. Based on the mandatory arbitration provision and Plaintiff invoking the arbitration provisions in the MSA, the AAA has jurisdiction in Dallas, Texas, over the dispute between the parties as detailed in the attached First Amended Demand for Arbitration. *See* Exhibit C.

6. Nearly two months after Ascension originally filed its Demand for Arbitration on December 23, 2020, Plaintiff, Lanning, and Brozena informed the AAA that they refuse to consent to the Arbitration and, instead, filed this lawsuit alleging theft of trade secrets for the first time. *See* Exhibit D. Notably, in this lawsuit, Plaintiff does not reference the pending Arbitration nor does it seek relief from the pending Arbitration for Plaintiff or its nonparty co-founders, Lanning and Brozena. *See* Plaintiff's Complaint [Doc. No. 1]. In response, Ascension has written Plaintiff, Lanning, and Brozena and advised them of their obligation to proceed with the Arbitration which Plaintiff originally initiated. *See*

Exhibit E. In reply, Plaintiff, Lanning, and Brozena state that they: "will not be participating in Arbitration of this matter absent a Court order compelling them to do so. Moreover, case law on this issue is clear. The question of the existence and validity of an arbitration agreement is one to be decided by the Court, not the arbitrator(s)." *See* Exhibit F.

7. In response to Plaintiff, Lanning, and Brozena's vehement refusal to arbitrate absent a Court order compelling them to do so, pursuant to TEX. CIV. PRAC. & REM. CODE §171.024, Defendants have been forced to seek an order from this Court compelling their participation in the pending Arbitration pursuant to the MSA. Consequently, Defendants seek an order from this Court dismissing Plaintiff's claims against Defendants and compelling the Plaintiff, Lanning, and Brozena to participate in the pending Arbitration pursuant to the MSA, including the arbitrability of the claims between the parties, or, alternatively, ordering limited discovery from Plaintiff, Lanning, and Brozena related to the arbitrability of Plaintiff's claims.

### III. FACTS

8. Defendants vigorously dispute the facts set forth in Plaintiff's Complaint and provide the following factual background. On February 6, 2017, Ascension entered into the MSA with Optics wherein Optics agreed to develop customized applications for Ascension to aid in its review of loan files as part of its due diligence functions. *See* Exhibit A.

9. Under the terms of the MSA, the development period was supposed to last four months, with Ascension paying Optics $20,000 per month to fund the development. However, Optics failed to timely deliver the applications as agreed and Ascension continued funding the development at $20,000 per month with the stipulation that Ascension would later receive a credit from Optics for such amounts against amounts

otherwise due to Optics after the development was complete. After nearly two years, the development was still not complete.

10. In connection with the development of the applications, Ascension provided Optics with voluminous mortgage loan application files and loan documentation, some of which contained confidential information, including borrower data that included nonpublic personal information ("NPPI"). On January 25, 2019, Ascension confirmed that two cloud-servers belonging to Optics were subject to unauthorized access by foreign IP addresses as early as February 2018 until January 2019, and that NPPI within the data hosted on those servers was internet accessible and could have been acquired by unauthorized third parties (the "Optics Data Breach"). *See* Exhibit G. When confronted, Optics accepted full responsibility in its email communications with Ascension. *See id.* Such unauthorized disclosure and potential misuse of Ascension's confidential information constituted a breach of both Optics' contractual obligations under the MSA and its common law obligations to use reasonable care in protecting the data resulting in damages to Petitioners.

11. Upon the occurrence of the Optics Data Breach, Ascension ceased doing any business with Optics. During May and June of 2019, Ascension and Optics engaged in discussions through an exchange of draft settlement agreements but were unable to reach an agreement. When it became apparent to Ascension that Optics had no intention of settling the matter on terms acceptable to Ascension, pursuant to Section 8(b) of the MSA, Ascension sent a letter to Optics dated July 26, 2019 that provided written notice of the occurrence of the default under the MSA arising from the Optics Data Breach (the

"Notice of Default") and the automatic termination of the MSA upon expiration of the ten-day cure period ending on August 8, 2019 (the "Termination Date").

12. Section 6(d) of the MSA provides that if Optics becomes insolvent or files for bankruptcy, all intellectual property rights in the work product developed by Optics (the "Intellectual Property") shall become the exclusive property of Ascension. Ascension believes that Optics became insolvent and the Intellectual Property then was deemed the exclusive property of Ascension. In fact, Ascension believes that Optics was able to secure a dismissal of claims brought against it in a class action lawsuit relating to the Optics Data Breach by claiming that it is insolvent. Accordingly, Ascension demanded in the Notice of Default that Optics provide to Ascension, within five (5) business days after the Termination Date, true, accurate, unredacted, unencrypted and complete copies of the Intellectual Property, including (i) the machine learning source code ("ML Code"), (ii) the source code to the user interface systems through which Ascension provided training data to Optics to improve the ML Code, including the user interface proofing tool, search tool, speed tagger tool and page grader tool (collectively, the "UI Tools"), (iii) any other source code developed by Optics pursuant to the MSA that is necessary or useful to the full utilization and enjoyment of the Applications (the "Other Source Code"), and (iv) all documentation, designs, drawings, models, architectures, protocols, formulas and algorithms related to the Applications, the ML Code, the UI Tools and the Other Source Code. Optics flatly rejected this demand.

13. In addition, pursuant to Section 7(e) of the MSA, Ascension demanded that within five (5) business days after the Termination Date, all documentation provided by Ascension to Optics, which includes Confidential Information (as defined in the MSA),

and all portions of tangible materials prepared by Optics that reflect all or any portion of such Confidential Information, in original or summary form, be returned to Ascension. Optics has failed to return any of the Confidential Information to Ascension.

14. Incredibly, in its response to the Notice of Default, Optics claimed that no breach occurred under the MSA or that if it did, such default had been cured. Optics also would only consent to the termination of the MSA if Ascension executed documentation confirming Optics' ownership of all Intellectual Property. Despite Ascension's payments to Optics, Optics remained steadfastly unwilling to provide Ascension an unencrypted copy of the software, which was incomplete and nonfunctional, notwithstanding Ascension agreeing to impose numerous restrictions being placed on the use of the Intellectual Property by Ascension.

15. After Plaintiff invoked the arbitration provision of the MSA and demanded an AAA mediation, Ascension and Plaintiff subsequently submitted to an unsuccessful mediation through the AAA. *See* Exhibit B.

16. Following Plaintiff's aggressive threats in December 2020 attempting to extort a settlement, Ascension filed its Demand for Arbitration on December 23, 2020.

17. After it became apparent Plaintiff was the alter ego of Lanning and Brozena such that both are personally and jointly and severally liable for the acts and/or omissions of Plaintiff, Lanning and Brozena were joined personally to the Arbitration, as detailed further in the First Amended Demand for Arbitration. *See* Exhibit C. Moreover, the facts establish that Plaintiff, Lanning, and Brozena are liable for breach of contract, negligent misrepresentation, violations of the Texas Deceptive Trade Practices Act, and other causes of action detailed in the First Amended Demand for Arbitration.

18. No one disputed the jurisdiction of the AAA at any time from when Plaintiff originally invoked arbitration on August 5, 2019 until over 18 months later when Plaintiff, Lanning, and Brozena's sent their February 22, 2021 letter objecting to the pending Arbitration and stating their intent not to submit to the pending Arbitration. *See* Exhibits B and D.

19. Incredibly, Plaintiff, Lanning, and Brozena now argue that they are not obligated to arbitrate because the MSA was somehow *partially* terminated after Defendants' data breach and Plaintiff, Lanning, and Brozena were unable to develop functional software. *See* Exhibit D. It is unclear how Plaintiff could invoke the mediation and arbitration provision of the MSA and proceed with an AAA mediation ***after*** the MSA was allegedly *partially* terminated and now claim that Plaintiff, Lanning, and Brozena are not bound by the very arbitration provision Plaintiff originally invoked. *Id*. Nonetheless, Defendants seek an order from this Court to compel Plaintiff, Lanning, and Brozena to participate in the pending Arbitration.

## IV. ARGUMENT AND AUTHORITIES

**A.  Because the parties to the MSA agreed to arbitrate the arbitrability of the dispute, this Court should dismiss this case and compel arbitration**

20. The initial question of arbitrability must be decided by the arbitrator in the AAA proceeding because the parties expressly incorporated into their arbitration agreement the AAA Rules. *See* Exhibit A, p. 6, ¶ 8(d); *Petrofac, Inc. v. DynMcDermott Petro. Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). These rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement". *Id.* Unless the parties clearly and unmistakably provide otherwise, the question of

whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 279 (5th Cir. 2019). A contract need not contain an express delegation clause to meet this standard. *Id.* As the Fifth Circuit held in *Petrofac*, an arbitration agreement that incorporates the AAA Rules "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id.* at 279-280. Under AAA Rule 7(a), "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Id.* at 280.

21. Here, the MSA signed by Plaintiff and Ascension expressly states: "the matter shall be resolved by binding arbitration administered and conducted under the Commercial Arbitration Rules of the American Arbitration Association and Title 9 of the United States Code." *See* Exhibit A, p. 6, ¶ 8(d). The arbitration agreement, by incorporating the AAA Rules "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Archer & White Sales, Inc.*, 935 F.3d 274, 279 at 279-280. Because Plaintiff and Ascension clearly and unmistakably provide their agreement to arbitrate arbitrability, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Id.* at 280. Consequently, Plaintiff is required to submit to arbitration to obtain a ruling on any objections it may have to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counter claim and this Court should, accordingly, compel Plaintiff to arbitrate.

**B.      Plaintiff must arbitrate because it signed MSA containing arbitration agreement and invoked arbitration.**

22.     In the event this Court does not compel Plaintiff's participation in the pending Arbitration to decide the arbitrability of the claims, this Court should, nonetheless, compel Plaintiff to arbitrate because Plaintiff entered into a binding arbitration agreement and the claims asserted between Plaintiff and Ascension are covered by the arbitration agreement.  *See* Exhibit A, p. 6, ¶ 8(d); *Kubala v. Supreme Production Svcs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016).   Moreover, Plaintiff previously invoke the arbitration agreement.  *See* Exhibit B.

23.     Specifically, a Texas court's analysis of an arbitration agreement involves two steps: (1) determine "whether the parties entered into *any arbitration agreement at all*" and (2) determine "whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Production Svcs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). The first determination is generally made based on state-law principles that govern contract formation. *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). "Challenges to the existence—as opposed to the enforceability or validity or scope—of an agreement to arbitrate, are for a court to decide." *Vallejo v. Garda CL Sw., Inc.*, 948 F. Supp. 2d 720, 726 (S.D. Tex. 2013). The objective is to ensure that arbitration agreements are enforced according to their terms and the intentions of the parties. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).

24.     Here, Plaintiff invoked the very arbitration agreement it now seeks to avoid and has not indicated any basis to avoid arbitration other than claiming in its objection letter to the AAA that a *partial* termination of the MSA occurred.  *See* Exhibit D. There is

no question about Plaintiff's consent to this arrangement involving claims between Plaintiff and Ascension. *See* Exhibit B (stating: "**Optics hereby triggers the Mediation and Arbitration provisions in the Agreement. See Agreement Section 8(c)-(d).**") (emphasis added). Having already invoked arbitration, Plaintiff provides no legal basis for revoking its consent and should be estopped from seeking to avoid the very arbitration provision it invoked.

25. Moreover, Plaintiff's purported theft of trade secret claims—asserted for the first time in this lawsuit over 18 months after it originally invoked arbitration—fall under the MSA, which Plaintiff cites extensively as controlling in its Complaint. It is implausible that Plaintiff can dispute that the MSA containing the arbitration agreement does not form the basis of the claims Plaintiff asserts in its Complaint given its heavy reliance on the MSA as the basis for the claims it asserts in its Complaint. Consequently, because both steps of the relevant inquiry under Texas law mandates arbitration, this Court should order Plaintiff to proceed with the arbitration process that it originally invoked. *See Kubala*, 830 F.3d at 201 (reciting two steps for determination of arbitrability: (1) determine "whether the parties entered into *any arbitration agreement at all*" and (2) determine "whether *this* claim is covered by the arbitration agreement.").

**C.     Plaintiff's purported claims against all the named defendants are required to be arbitrated, as well as Ascension's claims against Plaintiff's principals.**

26. Although Ascension disputes that Reidpin LLC, Rocktop Partners, LLC and Ursus Holdings, LLC are proper parties to the claims between Plaintiff and Ascension, all claims between the parties must be arbitrated, including all claims asserted Plaintiff's Complaint against Defendants and all claims asserted in Ascension's First Amended Demand for Arbitration against Plaintiff, Lanning, and Brozena.

27. "As a general rule, 'an arbitration clause cannot be invoked by a non-party to the *arbitration* contract.'" *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015) (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 532 (5th Cir. 2000)); *Parker v. Schlumberger Tech. Corp.*, 475 S.W.3d 914, 923 (Tex. App.—Houston [1st Dist.] 2015, no pet.)*. However, courts have recognized six theories that allow non-signatories to enforce arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary. *See G.T. Leach Builders*, 458 S.W.3d at 524 (citing *In re Kellogg Brown & Root*, 166 S.W.3d at 739); *see also Arthur Andersen*, 556 U.S. at 631, 129 S. Ct. at 1902 (noting that "traditional principles of state law" allow contracts to be enforced by or against nonparties through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel"); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006) (orig. proceeding) ("We have recently held that under certain circumstances a party to an arbitration agreement may be compelled to arbitrate claims with a nonparty if the controversy arises from a contract containing an arbitration clause.").

28. Equitable estoppel applies to allow a non-signatory to compel arbitration when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory. *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. Tex. 2000). When a signatory's claims against a non-signatory make reference to or presume the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. *Id.; Meyer v. WMCO-GP, LLC*, 211

S.W.3d 302, 307 (Tex. 2006). The Fifth Circuit refers to this as the "intertwined-claims test." *Grigson*, 210 F.3d at 527. The Texas Supreme Court has referred to this principal as "direct benefits" estoppel. *See Meyer*, 211 S.W.3d at 305 ("a person who seeks by his claim 'to derive a *direct benefit* from the contract containing the arbitration provision' may be equitably estopped from refusing arbitration.").

29. The Fifth Circuit recently reiterated that "[a]lthough the Texas Supreme Court has not clearly recognized intertwined claims estoppel," it had, "in *Hays*, made an '*Erie* guess' as to what the Texas Supreme Court would decide and held that 'the Texas Supreme Court, if faced with the question, would adopt intertwined claims estoppel.'" *Trujillo v. Volt Mgmt. Corp.*, No. 20-50526, 2021 WL 742660, at *3 (5th Cir. Feb. 25, 2021). Under intertwined claims estoppel, "[a] non-signatory to an arbitration agreement is entitled to compel arbitration 'if the relevant state contract law so permits.'" *Id.* (quoting *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 261 (5th Cir. 2014)). The theory requires a "close relationship" between the non-signatory defendant with one of the signatories and that the claims be "intimately founded in and intertwined with the underlying contract obligations." *Id.* (quoting *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 610 (5th Cir. 2016)). "It applies when there is a 'tight relatedness of the parties, contracts, and controversies.'" *Hays*, 838 F.3d at 610 (quoting *JLM Indus., Inc. v. Stolt-Nielsen, SA*, 387 F.3d 163, 177 (2d Cir. 2004).

30. Intertwined claims estoppel requires "a relationship between the parties that developed in a manner that makes it 'unfair' *not* to compel arbitration." *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 639 (Tex. 2018) (emphasis in original) (citation omitted). This does not include "a relationship of any kind." *Id.* Rather, the relationship

13

between the non-signatory and the signatory must be more "than being 'merely independent participants in a business transaction." *V3 Constr. Co., LLC v. Butler*, No. 02-20-00171-CV, 2021 WL 519912, at *1 (Tex. App.—Fort Worth Feb. 11, 2021, no pet. h.) (quoting *Jody James*, 547 S.W.3d at 639). The Texas Supreme Court focuses "on the principle that arbitration is 'a matter of consent, not coercion.'" *Jody James*, 547 S.W.3d at 640 (citations omitted). Moreover, the Texas Supreme Court, turning to Second Circuit precedent, noted that most cases compelling arbitration "typically involve some corporate affiliation between a signatory and a non-signatory, *not just a working relationship*." *Id.* (emphasis added).

31. Here, Lanning and Brozena are the sole officers and employees of Plaintiff. Additionally, Lanning signed the MSA in his capacity as CEO of Plaintiff while Brozena and Lanning were both intimately involved in the execution of all aspects of the MSA. Lanning and Brozena allegedly performed or unsuccessfully attempted to perform Plaintiff's contractual obligations by and through the MSA and, in return, received $463,670 in compensation pursuant to the MSA from Ascension. Moreover, Defendants anticipate that the evidence will show that Ascension was Plaintiff's sole or primary source of revenue and, as a consequence, Lanning and Brozena derived a direct benefit from Ascension's payments to Plaintiff pursuant to the MSA.

32. Ascension's claims against Lanning and Brozena, as the co-founders and sole employees of Plaintiff, arise, in pertinent part, from Lanning and Brozena's acts and omissions in attempting to provide the services pursuant to the MSA. Because Lanning and Brozena are the only employees of Plaintiff, it is nearly impossible to conduct discovery of the arbitration claims against Plaintiff without deposing Lanning and Brozena

14

about their representations, marketing, acts, and omissions as they relate to the terms of the MSA. Ascension's claims against Lanning and Brozena, as the sole employees of Plaintiff, are intertwined and interdependent with the claims against Plaintiff. Quite simply, all of Ascension's communications and activities pursuant to the MSA with Plaintiff occurred by and through Lanning and Brozena.

33. In sum, the relationship between Plaintiff and its co-founders, Lanning and Brozena, is not just a working relationship—it is a relationship between the parties that developed in a manner that makes it 'unfair' *not* to compel arbitration" because Plaintiff's existence and operations occur solely by and through the efforts of Lanning and Brozena. *See Jody James*, 547 S.W.3d at 639. Without Lanning and Brozena, Plaintiff's operations would cease to exist. Therefore, under intertwined claims estoppel, it 'unfair' *not* to compel arbitration and this Court should compel Lanning and Brozena to arbitrate Ascension's claims against Plaintiff alongside Plaintiff in the pending Arbitration alongside Plaintiff's claims against Defendants. *See id.*

## PRAYER

For these reasons, Defendants, Ascension Data & Analytics, LLC, Reidpin LLC, Rocktop Partners, LLC and Ursus Holdings, LLC respectfully move to dismiss this matter and compel arbitration pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, or, in the alternative, and while preserving jurisdictional defenses, stay this lawsuit and order discovery related to the arbitrability of Plaintiff's claims.

Respectfully Submitted,

**FISHERBROYLES, LLP**

By: */s/ Trent D. Stephens*
**TRENT D. STEPHENS**
Texas Bar No. 24008081
trent.stephens@fisherbroyles.com
2925 Richmond Ave., Ste. 1200
Houston, Texas 77098
(713) 425-3730

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendants' Motion to Dismiss and to Compel Arbitration or, alternatively, to Stay Matter, and Order Discovery has been served on all counsel of record via the Court's Electronic Filing System.

This 26th day of March, 2021.

 */s/ Trent D. Stephens*
**TRENT D. STEPHENS**