**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| PAIRPREP, INC. d/b/a OPTICSML, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  2:21-cv-00057-JRG |
| v. | ) | |
| | ) | |
| ASCENSION DATA AND ANALYTICS, LLC, | ) | |
| REIDPIN LLC, ROCKTOP PARTNERS LLC, | ) | **JURY TRIAL DEMANDED** |
| URSUS HOLDINGS LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF PAIRPREP, INC. d/b/a OPTICSML'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND TO COMPEL ARBITRATION, OR, ALTERNATIVELY,
TO STAY THIS MATTER, AND ORDER DISCOVERY**

## TABLE OF CONTENTS

I.    **BACKGROUND** ...................................................................................................... 1

II.   **SUMMARY OF ARGUMENT** .......................................................................... 2

III.  **THE MASTER SERVICE AGREEMENT** ..................................................... 3

IV.  **ARGUMENT** ........................................................................................................ 4

   A.  **THIS COURT, NOT AN ARBITRATOR, SHOULD DECIDE ARBITRABILITY OF PLAINTIFF'S COMPLAINT.** ................................................................ 4

   B.  **PLAINTIFF'S COMPLAINT IS NOT SUBJECT TO ARBITRATION.** .................. 7

      **1. Plaintiff's Complaint Is Not Subject To Arbitration Because Of The Carve- Out Provision Related to Seeking Equitable Relief.** ................................................ 8

      **2. The Arbitration Provision Of The MSA Did Not Survive Termination Of The Agreement.** ................................................................................................ 11

      **3. Defendants' Insurer, Indian Harbor Insurance Company, Is Not A Signatory To The MSA And Cannot Compel Arbitration.** ................................................ 15

V.   **CONCLUSION** .................................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
  935 F.3d 274 (5th Cir. 2019) ............................................................ passim

*Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.*,
  306 Fed.Appx. 188 (2009) .................................................................. 11

*Beckham v. William Bayley Co.*, 655 F.Supp.
  288, 291-92 (N.D.Tex.1987).............................................................. 12

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006)............................................................................ 4

*Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*,
  525 S.W.3d 671 (Tex. 2017)............................................................... 17

*Commercial Metals Co. v. Balfour, Guthrie, & Co., Ltd.*,
  577 F.2d 264 (5th Cir. 1978) ............................................................. 11

*Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*,
  294 S.W.3d 164 (Tex. 2009)............................................................... 15

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002)........................... 6

*Exxon Mobil Corp. v. Rincones*,
  520 S.W.3d 572 (Tex. 2017)............................................................... 17

*First Bank v. Brumitt*,
  519 S.W.3d 95 (Tex. 2017)................................................................. 18

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995)............................................................................ 6

*Fleetwood Enters. Inc. v. Gaskamp*,
  280 F.3d 1069 (5th Cir. 2002) ........................................................... 11

*Freis v. Canales*,
  877 S.W.2d 283 (Tex. 1994)............................................................... 13

*G.T. Leach Builders, LLC v. Sapphire V.P., LP*,
  458 S.W.3d 502 (Tex. 2015)............................................................... 18

*Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*,
    536 F.3d 439 (5th Cir. 2008) ............................................................... 13

*In re FirstMerit Bank, N.A.*,
    52 S.W.3d 749 (Tex. 2001) .................................................................... 4

*In re Kellogg Brown & Root, Inc.*,
    166 S.W.3d 732 (Tex. 2005) ........................................................... 17, 18

*In re Merrill Lynch Trust Co. FSB*,
    235 S.W.3d 185 (Tex. 2007) ................................................................... 6

*In re Morgan Stanley & Co., Inc.*,
    293 S.W.3d 182 (Tex. 2009) ................................................................... 4

*In re NEXT Fin. Grp., Inc.*,
    271 S.W.3d 263 (Tex. 2008) ................................................................. 17

*In re Palm Harbor Homes, Inc.*,
    195 S.W.3d 672 (Tex. 2006) ........................................................... 11, 17

*In re Weekley Homes, L.P.*,
    180 S.W.3d 127 (Tex. 2005) ................................................................. 18

*Italian Cowboy Partners, Ltd. v. Prudential ins. Co. of Am.*,
    341 S.W.3d 323 (Tex. 2011) ................................................................. 15

*J.M. Davidson, Inc. v. Webster*,
    128 S.W.3d 223 (Tex. 2003) ................................................................. 15

*Jody James Farms, JV v. Altman Group, Inc.*,
    547 S.W.3d 624 (Tex. 2018) ....................................................... 17, 18, 19

*Kubala v. Supreme Production Svcs., Inc.*,
    830 F.3d 199 (5th Cir. 2016) ................................................................... 6

*Litton Financial Printing Div., v. National Labor Relations Board et al*,
    501 U.S. 190 (1991) ............................................................................. 12

*Lyons v. Montgomery*,
    701 S.W.2d 641 (Tex.1985) .................................................................. 13

*MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*,
    995 S.W.2d 647 (Tex. 1999) ................................................................. 17

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)................................................. 12

*Petrofac, Inc. v. DynMcDermott Petro. Operations Co.*,
   687 F.3d 671 (5th Cir. 2012) ............................................................................... 5

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967).......................................................................................... 4, 6

*Prime Prods., Inc. v. S.S.I. Plastics, Inc.*,
   97 S.W.3d 631 (Tex.App.—Houston [1st Dist.] 2002, pet. denied)........................ 11

*Reeder v. Wood Cnty. Energy, LLC*,
   395 S.W.3d 789 (Tex. 2012).............................................................................. 15

*Roe v. Ladymon*,
   318 S.W.3d 502 (Tex. App.—Dallas 2010, no pet.)............................................ 6

*Scherk v. Alberto-Culver Co.*,
   417 U.S. 506 (1974).......................................................................................... 13

*Steven v. Fidelity & Cas. Co. of New York*,
   58 Cal.2d 862 (Cal. 1962)................................................................................. 15

*Strata Heights International Corp. v. Petroleo Brasileiro*, S.A.,
   67 F. App'x 247, 2003 WL 21145663 (5th Cir. 2003) ...................................... 13

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*,
   64 F.3d 773 (2d Cir. 1995)............................................................................... 19

*TSI USA, LLC v. Uber Technologies, Inc.*,
   2017 WL 106835 (N.D. Tex. Jan. 11, 2017) ............................................... 14, 15

*Volt Info. Scis., Inc. v. Bd. Of Trs. Of Leland Stanford Jr. Univ.*,
   489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 288 (1989)..................................... 6

*Weatherford International, LLC v. Binstock*,
   452 F.Supp.3d 561 (2020) ........................................................................... 13, 14

iv

Plaintiff Pairprep, Inc. d/b/a OpticsML ("OpticsML" or "Plaintiff") hereby opposes Defendants Ascension Data and Analytics, LLC, Reidpin LLC, Rocktop Partners, LLC and Ursus Holdings, LLC's (hereinafter, "Defendants") Motion to Dismiss and to Compel Arbitration, or, Alternatively, to Stay this Matter, and Order Discovery ("Motion"), and files this Response as follows.

## I.   BACKGROUND

Defendants own over 7 billion dollars of U.S. mortgages.  In early 2016, one of Defendants' wholly owned entities, Ursus Holdings, experienced a data breach which required notifying state regulators and the borrowers who were at risk.  In late 2016, Defendants contracted for various services with Plaintiff, a two-person start-up who were unaware and kept in the dark with respect to the prior data breach.  Defendants contracted with Plaintiff to develop the software, technology, and artificial intelligence/machine learning required to enable a large set of computers to read complex mortgage documents and better understand, interpret and summarize the vast amounts of mortgage data Defendants were purchasing in an effort to materially grow Defendants' assets and profits.  This endeavor was governed by a Master Services Agreement ("MSA" or "Agreement") entered into between one of Defendants' alter egos, Ascension Data & Analytics, LLC f/k/a Ursus Advisors, LLC and Plaintiff on February 6, 2017.

In mid 2018, Plaintiff, lacking the knowledge of Defendants prior data breach, was growing increasingly concerned about the lax security standards established by the Defendants as they transmitted reams of sensitive data and information to Plaintiff.  Plaintiff's repeated concerns and warnings to Defendants to raise the security standard across all servers, including Defendants', were repeatedly ignored.

In early 2019, a data security breach occurred between Defendants' and Plaintiff's servers, which were directly linked.  Thereafter, Defendants erroneously attempted to place the entire blame for the breach on Plaintiff despite its earlier warnings of just such an occurrence.  In addition, Defendants used the data breach, and the accusations of fault against Plaintiff as an opportunity to co-opt and misappropriate Plaintiff's work product and trade secrets in direct contravention of the MSA.  Defendants slandered Plaintiff by claiming it was insolvent in an attempt to claim ownership of Plaintiff's work product and trade secrets, and repeatedly refused to negotiate an exclusive license to said work product and trade secrets as mandated by the MSA.  In conjunction therewith, Defendants also refused to acknowledge in writing Plaintiff's ownership in and of the aforementioned work product and trade secrets required under the MSA.  Defendants further repeatedly refused, again in contravention of the MSA, to return to Plaintiff all copies and derivatives of its work product and trade secrets.  Instead on July 26, 2019, Defendants disingenuously alleged Plaintiff was in breach and/or default of the MSA and terminated the entire Agreement pursuant to Section 8(b), effectively terminating the entire agreement as of August 8, 2019.  Defendants have continually used threats since the beginning of 2019 until now in effort to extort the rights to Plaintiff's intellectual property, work product and trade secrets and avoid their obligation to pay for the same.

## II.    SUMMARY OF ARGUMENT

Defendants' Motion raises two main issues.  First, under the language of the MSA who is empowered to determine the question of arbitrability, this Honorable Court or the arbitrator(s)?  Under precedent familiar to this Honorable Court, *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 279 (5th Cir. 2019), the answer is unmistakably this Honorable Court.  Second, is the matter set forth in Plaintiff's complaint subject to the referenced arbitration provision

contained within the MSA?  Under the clear and unambiguous language of the MSA it is not, as more fully explained below.

## III.    THE MASTER SERVICE AGREEMENT

The Agreement entered into between the parties is not a complicated nor particularly lengthy document; it consists of seven pages broken into fourteen sections. The Agreement was drafted and presented to Plaintiff for execution by at least Jason Pinson and Josh Harrison, both lawyers and executives at Defendant Rocktop.  The ability to unilaterally terminate the agreement is provided in Section 5(b) and Section 8(b). Both sections provide that either party may terminate the agreement by providing written notice of an alleged breach or default of the agreement by the other party. Absent a waiver in writing by the party providing notice of the alleged breach, the entire agreement terminates at the end of a ten (10) day waiting period.

Critically, in at least three sections of the MSA the parties agreed that certain sections of the Agreement survive the aforementioned termination of the Agreement. For instance, Section 6 titled Intellectual Property at subsection (e) contains the following language:

(e)    **This section shall survive the termination of this Agreement**.[1]

*See* Exhibit A, p.4, ¶ 6(e).

Similarly, Section 7 titled Confidentiality contains the same provision:

(f)    **This Section shall survive the termination of this Agreement**.[2]

*See Id.* at p.5, ¶ 7(f).

Finally, Section 12 titled Survival similarly indicates that:

---

[1] Among other claims, Plaintiff's Complaint seeks remedies for Defendants' breach of this section of the Agreement.

[2] Again, Plaintiff's Complaint seeks equitable relief in light of Defendants' failure to abide by one or more provisions of this section of the Agreement.

All representations, warranties and covenants in this agreement including, without limitation, the provisions relating confidentiality **will survive the terms [*sic*] [termination] of this agreement.** *See id.* at p.7, ¶ 12.

These are the only sections of the MSA that the parties all explicitly agreed shall survive termination of the Agreement.

## IV.   ARGUMENT

### A.   THIS COURT, NOT AN ARBITRATOR, SHOULD DECIDE ARBITRABILITY OF PLAINTIFF'S COMPLAINT.

The U.S. Supreme Court has identified three basic challenges to the enforceability of an alleged arbitration agreement and the contemporaneous issue of who should adjudicate the issue, a court or an arbitrator. In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), the Court identified these as (1) challenges to the validity of the agreement; (2) challenges to the validity of the contract as a whole; and (3) challenges that call into question the existence of an agreement between the parties. *Id.* at 444 n.1.; *see also, In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 186 (Tex. 2009).  Under the U.S. Supreme Court's "separability doctrine," arbitration clauses are considered separate or separable from the contracts in which they are included.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967).  Under this doctrine, it is well established by federal and state courts that challenges to the validity of an arbitration clause within a contract *must be heard by the courts*, not the arbitrator or arbitration panel.  *Buckeye*, 546 U.S. at 445-46; *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001).

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 279 (5th Cir. 2019), cert. granted, 141 S. Ct. 107, 207 L. Ed. 2d 1050 (2020), and cert. denied, 141 S. Ct. 113, 207 L. Ed. 2d 1053 (2020), and cert. dismissed as improvidently granted sub nom. *Henry Schein, Inc v. Archer & White Sales, Inc.*, 141

S. Ct. 656, 208 L. Ed. 2d 512 (2021).  When determining that intent, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so."  *Id.*

Defendants, in their Motion, erroneously rely on the Fifth Circuit's decisions in *Petrofac, Inc. v. DynMcDermott Petro. Operations Co.*, 687 F.3d 671 (5ᵗʰ Cir. 2012) and *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5ᵗʰ Cir. 2019) for the proposition that despite this default determination, the arbitrator(s) should be the body to determine the arbitrability of the current claims since the arbitration provision within the MSA referenced Arbitration subject to the American Arbitration Association ("AAA").  However, *Petrofac* is easily distinguishable from the current facts, and Defendants selectively and misleadingly cite favorably to *Archer*, when closer inspection reveals its reasoning and holding places the arbitrability issue firmly in this Honorable Court's purview.

While containing similar language referencing arbitration pursuant to the AAA, the *Petrofac* case had a dramatically different factual setting. In *Petrofac*, the parties had already acquiesced and participated in a weeklong hearing of arbitration proceedings, the defendant only belatedly objecting to the same following a reconvening of the arbitration hearing *after* a seven month postponement. *Id.* at 674.  In addition, the arbitration panel had found that the defendant had waived any objection to the arbitration based upon said activity.  *Id.*

Even more so, the familiar case of *Archer* and its virtually identical facts and contract language, clearly places the issue of arbitrability in the hands of this Honorable Court and simultaneously reveals that Plaintiff's Complaint is outside of the arbitration provision within the MSA.  As this Court is aware, *Archer's* long history consisted of two decisions by the Fifth Circuit Court of Appeals and one intervening decision by the United States Supreme Court.  In reviewing

this Honorable Court's decision denying the motion to compel arbitration, the Fifth Circuit articulated the two-step process of first determining whether the parties entered into any arbitration agreement at all, followed by the question of whether the particular claim at issue is covered by the arbitration agreement. *Archer,* 935 F.3d at 278 (citing *Kubala v. Supreme Production Svcs., Inc.,* 830 F.3d 199, 201 (5ᵗʰ Cir. 2016)). In *Archer*, the court reiterated the established rule that the court "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *Id.* at 279 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). As explained by the *Archer* court:

> [w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract. But we should also heed its warning that courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so. The parties [here] could have unambiguously delegated this question, but they did not, and we are not empowered to re-write their agreement.

*Archer,* 935 F.3d at 282 (internal quotes omitted). "While a presumption towards arbitration may exist in certain circumstances, the U.S. Supreme Court has repeatedly emphasized that arbitration is a matter of consent not coercion and that the Federal Arbitration Act does not require parties to arbitrate when they have not agreed to do so, and its purpose is to make arbitration agreements as enforceable as other contracts, but *not more so.*"[3]

 "Tasked with interpreting the arbitration clause anew, we conclude that the parties have not clearly and unmistakably delegated the question of arbitrability to an arbitrator. Accepting that the district court had the power to decide arbitrability, we now hold that the district court

---

[3] *Roe v. Ladymon*, 318 S.W.3d 502 (Tex. App.—Dallas 2010, no pet.) (internal quotations omitted) (citing *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 192 (Tex. 2007) (quoting *Volt Info. Scis., Inc. v. Bd. Of Trs. Of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 288 (1989)); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (also quoting *Volt*, 489 U.S. at 478); and *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)).

correctly determined that this case is not subject to the arbitration clause and affirm." *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d at 277 (5th Cir. 2019); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 141 S. Ct. 656, 208 L. Ed. 2d 512 (2021).

Here, clearly, the parties agreed to exclude or "carve out" certain claims that are not subject to the arbitration provision. *See* Exhibit A, Section 8(d) ("Nothing in this Section, however, shall prevent either party from seeking equitable relief from a court of competent jurisdiction for the other party's breach of the Confidentiality provisions of this Agreement."). Given this carve out language, the MSA does not evince a "clear and unmistakable" intent to delegate arbitrability. Therefore, this issue would fall within the Court's purview.

### B.    PLAINTIFF'S COMPLAINT IS NOT SUBJECT TO ARBITRATION.

Similar to *Archer*, in the instant matter, Plaintiff and Defendants, not only disagree on who shall make the determination of arbitrability, but also on whether the underlying dispute set forth in the Complaint is arbitrable at all based upon the MSA. *Id.* There are three separate and distinct reasons why Plaintiff's Complaint is not subject to the alleged arbitration provision within the MSA—(1) As per the ruling and circumstances in the *Archer* decision, the arbitration provision in the MSA specifically carved-out matters seeking injunctive or equitable relief in relationship to breach of the Confidentiality provision, which Plaintiff alleges in its Complaint; (2) Pursuant to the clear and unambiguous language of the MSA the arbitration provision did not survive the unilateral termination of the Agreement by Defendants, effective August 8, 2019; and (3) Defendants' Amended Demand in Arbitration as filed with the arbitration panel is in reality nothing more than a poorly disguised subrogation claim by Defendants' insurance company Indian Harbor Insurance Company, who is not a signatory to the MSA, and therefore has no standing to invoke arbitration. *Id.*

### 1. Plaintiff's Complaint Is Not Subject To Arbitration Because Of The Carve- Out Provision Related to Seeking Equitable Relief.

As in *Archer*, neither Plaintiff nor Defendants in the instant case deny that there was an arbitration provision within the MSA.  Moreover, it is also undisputed the arbitration provision referenced arbitration under the rules of the AAA ("…the matter shall be resolved by binding arbitration administered and conducted under the Commercial Arbitration Rules of the American Arbitration Association and Title 9 of the United States Code.").  *See* Exhibit A, p. 6, ¶ 8(d). However, and though utterly ignored by Defendants in their Motion, as in the *Archer* contract, the MSA explicitly provides a carve-out for actions seeking equitable relief under the confidentiality provision of the Agreement.  *Id*.  For instance, the last sentence in Section 8(d) (which contains the Arbitration language) states:

> Nothing in this Section, however, shall prevent either party from seeking equitable relief from a court of competent jurisdiction for the other party's breach of the Confidentiality provisions of this Agreement.

*See* Exhibit A, p. 6, ¶ 8(d).     Furthermore, this carve-out and intention of the parties is further confirmed and set forth in Section 7 Confidentiality, in subsection (c) where it provides the following language:

> (c)     Each Party agrees that any [un]authorized [*sic*] use or disclosure of Confidential Information may cause immediate and irreparable harm to the other, for which monetary damages may not constitute an adequate remedy. In that event, each party agrees that injunctive relief may be warranted in addition to any other remedies which may be available.

*Id*. at p. 5, ¶ 7(c).  Even further indication that other potential disputes pursuant to the Agreement would not be subject to the arbitration provision are revealed in Section 8(e) which contemplates challenges to the validity of the arbitration Agreement and recognizes that those shall be determined by the Court.  For instance, Section 8(e) provides that:

(e)      In any action arising hereunder or any separate action pertaining to the validity of this agreement, the prevailing party should awarded reasonable attorney's fees and costs *both in the trial court and on appeal.* (emphasis added).

*Id.* at p. 6, ¶ 8(e).   As stated by the court in *Archer*:

We cannot re-write the words of the contract. The most natural reading of the arbitration clause at issue here states that any dispute, except actions seeking injunctive relief, shall be resolved in arbitration in accordance with the AAA rules. The plain language incorporates the AAA rules—and therefore delegates arbitrability—for all disputes except those under the carve-out. Given that carve-out, we cannot say that the Dealer Agreement evinces a "clear and unmistakable" intent to delegate arbitrability.

*Archer,* 935 F.3d at 281-82.   Additionally, earlier in Section 8 where the heading Remedies appears, it is clear that the parties contemplated potential action apart from arbitration in light of an attempt at remedying an alleged default under the Agreement.   For instance, Section 8(b) titled Remedies provides "in addition to *any and all other rights a Party may have available according to law,* if a Party defaults by failing to substantially perform any provision, term or condition this Agreement, the other Party may terminate the Agreement by providing written notice to the defaulting party." (emphasis added).

The same conclusion is inescapable in the instant case. The relevant carve-out language from the MSA is extremely similar to the language in *Archer*:

| Dealer Agreement between Archer and Pelton & Crane; *Archer,* 935 F.3d at 279. | Section 8(d) of the Master Service Agreement between Defendants and Plaintiff |
|---|---|
| Disputes. This Agreement shall be governed by the laws of the State of North Carolina. Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of Pelton & Crane), shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association [ (AAA) ]. The place of arbitration shall be in Charlotte, North Carolina. | (d)    Arbitration. If the matter is not resolved within thirty (30) days after submission to mediation, the matter shall be resolved by binding arbitration administered and conducted under the Commercial Arbitration Rules of the American Arbitration Association and Title 9 of the United States Code. . . . Nothing in this Section, however, shall prevent either party from seeking equitable relief from a court of competent jurisdiction for the |

9

| | other party's breach of the Confidentiality provisions of this Agreement. |

Both the plaintiff in *Archer* and Plaintiff in the instant case seek relief within the above referenced carve-out of arbitrability.[4]  It is respectfully submitted that based upon the similarity of the contract language as well as the similarity of the allegations in the underlying Complaint, the Court's determination in *Archer* controls and mandates the same result in the instant case.

In *Archer*, the Fifth Circuit found that the language excepting actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property "create[d] a carve-out for actions seeking injunctive relief." Critically, the Fifth Circuit held the language did not limit the exclusion to an "action seeking *only* injunctive relief." *Id.* at 283. (emphasis in original).

The same conclusion is inescapable here.  The carve-out for actions seeking injunctive relief to enforce the Confidentiality provisions of the MSA does not limit the exclusion to actions *only* seeking that relief. The Fifth Circuit noted that the language in the *Archer* contract did not limit the exclusion to actions seeking only injunctive relief, nor did it limit the carve-out to claims for injunctive relief.  *Id.*  Similarly, the instant language in the MSA does not limit a party to seeking only equitable relief nor does it limit a party to only claims related to Confidentiality provisions, it merely carves out equitable relief related to the claims of the Confidentiality provisions.  Such a claim and assertion is contained within Plaintiff's Complaint.

As also stated in *Archer*, "the mere fact that the arbitration clause permits Archer [Plaintiff] to avoid arbitration by adding a claim for injunctive relief does not change the clause's plain meaning."  *Id.*  Considering Defendants' various objections to the Court's reasoning, the *Archer*

---

[4] Plaintiff's Complaint seeks remedies for breach of contract and more specifically seeks injunctive relief with respect to the Confidentiality provisions of the MSA. *See* Complaint, Dkt. No. 1.

court concluded "we cannot address the underlying merits of Archer's claim at this stage. It is enough to note that the current action is indeed an "action seeking injunctive relief." *Id*. at 284. Similarly, in the instant case, it is enough that the current action is indeed one seeking equitable relief from this Court for Defendants' breach of the confidentiality provisions within the MSA. Therefore, Plaintiff's Complaint is not subject to arbitration.

### 2.  The Arbitration Provision Of The MSA Did Not Survive Termination Of The Agreement.

Determining the validity of agreements to arbitrate is done by application of ordinary state contract law principles. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006).  The well-established elements of a valid contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex.App.—Houston [1st Dist.] 2002, pet. den.).  As stated by the Fifth Circuit Court of Appeals "it must be emphasized that the question of whether or not a dispute arising out of a contract will be subject to the arbitration process is left solely to the agreement of the parties to the contract. If the contract does not so provide, then no federal law requires arbitration." *Commercial Metals Co. v. Balfour, Guthrie, & Co., Ltd.*, 577 F.2d 264, 266 (5th Cir. 1978).

Determining whether a dispute is subject to arbitration the Court engages in a two-step process.  First, it must determine whether a valid agreement to arbitrate exists between the parties. *Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.*, 306 Fed.Appx. 188, 191 (2009) (citing *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).  If so, then the court must determine whether the dispute at hand fits within the arbitration agreement. *Id*.  And though federal courts have long adhered to a policy favoring arbitration, *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the U. S.

Supreme Court has recognized that that presumption ceases in the context of an expired contract or agreement which contained an arbitration provision. *Litton Financial Printing Div., a Div. of Litton Business Systems, Inc. v. National Labor Relations Board et al*, 501 U.S. 190, 209 (1991). In *Litton*, the Court noted that to continue or apply that presumption wholesale in the context of an expired agreement "would make limitless the contractual obligation to arbitrate." *Id.*

In addition, the federal policy of resolving doubts in favor of arbitration cannot serve to stretch a contractual clause beyond the scope intended by the parties or allow modification of the plain and unambiguous provisions of an agreement. *Beckham v. William Bayley Co.*, 655 F.Supp. 288, 291-92 (N.D.Tex.1987). Here, giving each contract provision meaning and implication, it is clear that the parties only intended to have three provisions or portions of the MSA survive Defendants' termination of the Agreement on August 8, 2019—the Confidentiality provision, the Intellectual Property provision, and Survival provision. *See* Exhibit A, ¶¶ 6, 7, and 12. If Defendants had truly believed that Plaintiff was in material breach or default under any provision of the MSA, they could have instituted the binding arbitration provision while the MSA was still in effect. But they chose not to do so. In unilaterally acting to terminate the Agreement, Defendants must face the consequences of those actions. Defendants may believe they have a justifiable grievance or cause of action against Plaintiff, but by the very language within the MSA following their termination of the Agreement that dispute is not subject to binding arbitration. The language of the MSA is clear and it is axiomatic that the language of the contract will be enforced according to its plain meaning, unless such a reading would defeat the intentions of the parties. *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex.1985). Moreover, while a court may enforce an arbitration agreement a court *may not* order arbitration in the absence of such an agreement. *Freis v. Canales*, 877 S.W.2d 283 (Tex. 1994).

12

In similar setting, it has been held that an agreement to arbitrate is in fact a specialized kind of forum-selection clause.  *Strata Heights International Corp. v. Petroleo Brasileiro*, S.A., 67 F. App'x 247, 2003 WL 21145663, at *5 (5th Cir. 2003) (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)).  The clauses are, in a way, cousins of each other.[5]  And, several analogous cases addressing the survivability of forum-selection clauses are extremely persuasive, if not controlling.  The first of these is *Weatherford International, LLC v. Binstock*, 452 F.Supp.3d 561 (2020).   In *Weatherford*, the issue was Defendants' motion to dismiss for lack of personal jurisdiction and improper venue.  Defendants contended that a forum-selection clause in a contract between itself and Plaintiff Weatherford was unenforceable because it had terminated.  *Id.* at 567.  The forum-selection clause was contained within a non-disclosure agreement ("NDA") that set a termination on the third anniversary of the effective date of the NDA.  *Id.* at 569.  It was undisputed that the lawsuit initiated by Weatherford was instituted more than three years following the effective date and thus past the termination date of the NDA.  *Id.*   While the court noted the typical application of contractual resolution provisions, such as forum-selection, to sometimes apply to post-contractual disputes, it noted that was only "unless the plain language of the contract indicates the parties intended those provisions [resolution provisions] to expire."  *Id.* at 569 (citing *Strata Heights,* 67 F. App'x 247, at *7.  For instance, the Court noted that "the plain language [of the contract] may indicate that the forum-selection clause does not survive if the contract contains a survival clause that specifies clauses that survive termination, and the forum-selection clause is not among those listed.  *Id.* (citing *TSI USA, LLC v. Uber Technologies, Inc.*, 2017 WL 106835, at *5 (N.D. Tex. Jan. 11, 2017)).   Admittedly, the court in *Weatherford* did not follow this

---

[5] Similar to arbitration clauses, "forum selection clauses are "presumed enforceable, and the party resisting enforcement bears a 'heavy burden of proof.'"   *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008).

reasoning in the matter before it because the NDA also contained a provision that indicated all "obligations set forth . . . all provisions hereof necessary for the interpretation and enforcement of such obligations, shall survive." *Weatherford,* 452 F.Supp.3d at 569-70.  Given such language, the court concluded that the instant survival clause in the NDA was not necessarily an exclusive list of the terms that survive termination. *Id*. at 570.

It is submitted, notwithstanding, that the court in *Weatherford* under the instant facts would find that the subject arbitration provision <u>did not survive termination</u> of the MSA.  Unlike in *Weatherford* there is no similar provision providing that any and all provisions necessary for interpretation and/or enforcement of the MSA survive termination.  Again, only three sections within the MSA, Sections 6, 7, and 12 purport to claim survival post-termination the Agreement. Nothing within the arbitration provision itself even remotely suggests any intention that it should survive termination of the MSA.  To the contrary, the arbitration provision contemplated that a party could seek equitable relief in Court for an alleged breach of the Confidentiality provisions in Section 7.

Further support is found in the *TSI* case cited in *Weatherford*.  In *TSI*, Plaintiff set forth a strikingly similar argument to the instant case in contending that a forum-selection clause within a contract with Uber did not survive termination of the contract.  In the Uber contract a survival clause provided that payment obligations and certain enumerated sections of the Agreement "shall survive any termination of this Agreement." *TSI,* 2017 WL 106835, at *2.  The forum-selection clause was not within one of the enumerated sections to survive termination of the Agreement. Thus, *TSI* argued that the forum-selection clause did not survive termination of the Agreement. Uber's response, as it may be anticipated will be raised similarly by Defendants herein, was that the forum selection clause was not included within the survival clause because "it would have been

redundant to do so, and that terms relating to remedies and dispute resolution must survive termination of the contract. *Id*. at \*5. The Court found *TSI's* interpretation to be more persuasive.

> A plain reading of the terms of the Contract suggests that the Forum-Selection Clause does not survive the Contract's termination. A survival clause's purpose is to enumerate any clauses that will remain in effect after the agreement's termination. The omission of the Forum-Selection Clause from the Survival Clause therefore suggests that the parties did not intend for the Forum-Selection Clause to survive termination of the agreement. As the maxim "expresio unius est exclusio alterius" provides, the "mention of one matter implies the exclusion of all others."

*TSI*, 2017 WL 106835, at \*5 (citing *Steven v. Fidelity & Cas. Co. of New York*, 58 Cal.2d 862, 870 (Cal. 1962)).[6] Here, consistent with the reasoning of the Court in *TSI*, a plain reading of the MSA shows that the parties did not intend for arbitrability to survive past termination of the MSA. While Sections 6, 7, and 12 purport to survive post termination by express language, that survival language was clearly omitted from Section 8 relating to Arbitration. *See* Exhibit A, ¶8.

### 3. Defendants' Insurer, Indian Harbor Insurance Company, Is Not A Signatory To The MSA And Cannot Compel Arbitration.

Defendants' Motion ignores the fact that Defendants are attempting to force Plaintiff, even assuming a valid arbitration agreement, to arbitrate a subrogation matter brought by their insurance company, Indian Harbor Insurance Company. Indian Harbor Insurance Company is not a party to

---

[6] Though the United States District Court for the N.D.Tex. applied California law in its determination in *TSI*, Plaintiff submits there is no reasonable basis to suggest that under Texas law this decision would have been any different. Consider similar to the California cases and principles cited in *TSI*, the similar principles and holdings found within Texas contract interpretation law. In Texas, a Court's primary concern in construing a contract is to ascertain the parties' intent. *Italian Cowboy Partners, Ltd. v. Prudential ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). Specifically, the Supreme Court in *J.M. Davidson* held that the court "must examine and consider the entire writing in an effort to harmonize and give effect to all provisions of the contract so that <u>none will be rendered meaningless</u>." (emphasis added). Moreover, "contract terms are given their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." *Reeder v. Wood Cnty. Energy, LLC*, 395 S.W.3d 789, 794-95 (Tex. 2012) (quoting *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 169 (Tex. 2009)).

nor referenced in any way within the MSA.  Even if the Court were to reject Plaintiff's arguments above regarding the lack of an enforceable arbitration agreement that covers Plaintiff's Complaint, the question is not simply whether Plaintiff has agreed to arbitrate with someone, but whether a binding arbitration agreement exists between Plaintiff and the Defendants' insurance company. Clearly, it does not. Moreover, based upon the allegations in Defendants' First Amended Demand for Arbitration nearly 80% of the damages sought are claimed by Defendants' insurance company.[7]

Defendants' First Amended Demand for Arbitration was filed in its name *and* that of its insurance company, specifically titled Ascension Data & Analytics, LLC's and Indian Harbor Insurance Company's First Amended Demand for Arbitration.  *See* Exhibit B.  Defendants make no attempt to suggest that Indian Harbor is a signatory or third-party beneficiary to the MSA, but simply claim that Indian Harbor "has a right of subrogation to all payments paid pursuant to its policy providing coverage for the data breach."  *Id.* at 2.  In terms of the contractual relationship between Defendants and its insurer, Indian Harbor has no rights, is not a party to, and cannot compel Plaintiff to arbitrate its subrogation allegations under the MSA.

Additionally, the narrow exceptions to when a non-signatory to an arbitration agreement is either entitled or compelled to arbitration do not apply to Defendants' insurance company.  Those exceptions are generally expressed as the following: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third party beneficiary. *Jody*

---

[7] As stated in the First Amended Demand for Arbitration, *See* Exhibit B, Defendants allege the following damages: $463,470 paid by Ascension to Optics for development of the application; $50,000 in deductible paid to respond to the data breach; $1,713,076.71 paid by AXA [Indian Harbor Insurance Company] to respond to the data breach; Expert witness fees; Costs of court; Arbitration fees; Reasonable and necessary attorneys' fees; Prejudgment and post-judgment interest; and Other and further relief, at law or in equity, to which Petitioners may be entitled, including Petitioners' damages detailed herein.

*James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 633 (Tex. 2018); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005).

First, there is no agency relationship between Defendants and their insurer to enable Indian Harbor to invoke an arbitration clause under a contract of which it is not a signatory.  To establish an agency relationship a non-signatory must show it was subject to the principle's signatory control and authorized to act as its agent.  *Jody James Farms,* 547 S.W.3d at 635; *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 697 (Tex. 2017); *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 589 (Tex. 2017).  Clearly, the insurance company did not have any control over Defendants when they entered into the MSA and its alleged arbitration provisions. Because Indian Harbor did not exercise control over the Defendants, arbitration cannot be compelled on that basis. *Jody James Farms,* 547 S.W.3d at 635.

Similarly, Indian Harbor lacks the appropriate third-party beneficiary status.  It is true, like other contracts, arbitration agreements may in certain limited circumstances be enforced by third party beneficiaries.  However, that is only the case where the "parties to the contract intended to secure a benefit to that third party [herein, Indian Harbor] and entered into the contract directly for the third party's benefit." *Id.; see also, In re Palm Harbor Homes, Inc.,* 195 S.W.3d at 677; *see also, In re NEXT Fin. Grp., Inc.*, 271 S.W.3d 263, 267 (Tex. 2008).  Moreover, the benefit must be more than incidental and there must be evidence of the contracting parties' intent "to confer a direct benefit to a third party" and that must be unambiguously set forth in the contract. *Id*.; *see also, MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999).  Only the intention of the contracting parties is of controlling importance. *Id*.; *see also, First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (quoting *Banker v. Breaux*, 133 Tex. 183, 128 S.W.2d 23, 24 (1939)).  Here, the MSA between Plaintiff and Defendants does not facially benefit Indian Harbor.

It is undisputed that the MSA does not mention nor identify Indian Harbor nor mention or identify any insurance company as having any interest in the contract.  Any benefit to Indian Harbor is merely indirect and incidental.  *Jody James Farms,* 547 S.W.3d at 636.

Nor does any theory of equitable estoppel form a basis for compelling Plaintiff to arbitrate a subrogation claim with Defendants' insurer.  Arbitration estoppel, as it is sometimes referred to, is grounded in the theory of promissory estoppel.  That is, "when a promisor induces substantial action or forbearance by another, promissory estoppel prevents any denial of that promise if injustice can be avoided only by enforcement."  *Id.; see also, In re Weekley Homes, L.P.,* 180 S.W.3d 127, 133 (Tex. 2005).  Estoppel in the arbitration context is based on principles of contract and agency and does not create a requirement to arbitrate where none existed before.  *Id.*; *see also, In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 738.  Whether examined under the direct benefits estoppel theory or that of alternative estoppel theory, both described by the Texas Supreme Court in the *Jody James Farms* case, on this record there is no evidence or basis for the claim that Plaintiff should be estopped from refusing to arbitrate a subrogation claim with Defendants' insurance company.  *Jody James Farms,* 547 S.W.3d at 639.  It has been held that a mere relationship between the alleged signatories' claims and the contract containing an arbitration provision is not enough to compel a signatory to arbitrate claims against third parties under the direct benefits estoppel theory.  *G.T. Leach Builders, LLC v. Sapphire V.P., LP,* 458 S.W.3d 502, 527-30 (Tex. 2015).  Similarly, under the alternative estoppel theory, a theory not even fully adopted under Texas law, a non-signatory can successfully compel arbitration *only* where they have a "close relationship" with the signatory to an arbitration agreement and *only* if the claims are intertwined with the underlying contract obligations.  *Jody James Farms*, 547 S.W.3d at 639*; see also, Thomson-CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 779 (2d Cir. 1995).  Clearly in the

instant case, there is no "close relationship" between Plaintiff and Defendants' insurance company. Nor are the insurance company's interests founded in or intertwined with the underlying contract between Plaintiff and Defendants. In sum, it is clear that Defendants' First Amended Demand for Arbitration is being orchestrated by Defendants' insurance company, Indian Harbor, and their attempt to recoup monies they claim to have paid Defendants as the result of Defendants' data breach.  It is for all intents and purposes Indian Harbor's subrogation action masquerading as part of the alleged arbitration provision within Plaintiff and Defendants' MSA. This alone should, it is respectfully submitted, should be sufficient to deny Defendants' Motion to Compel Arbitration.

## V.   CONCLUSION

In conclusion, and based on the foregoing, under the language of the MSA this Honorable Court is empowered to determine the question of arbitrability, and Plaintiff's Complaint is not subject to arbitration for the reasons stated herein.  Therefore, Defendants' Motion to Dismiss and to Compel Arbitration, or, Alternatively, to Stay this Matter, and Order Discovery should be denied in its entirety.

Dated: April 23, 2021                            Respectfully submitted,

                                                 */s/Eric H. Findlay*
                                                 Eric H. Findlay
                                                 Texas State Bar No. 00789886
                                                 Brian Craft
                                                 Texas State Bar No. 04972020
                                                 Findlay Craft, P.C.
                                                 102 North College Avenue, Suite 900
                                                 Tyler, Texas 75702
                                                 903-534-1100
                                                 903-534-1137 fax
                                                 efindlay@findlaycraft.com
                                                 bcraft@findlaycraft.com

                                                 ***Attorneys for Plaintiff***
                                                 ***Pairprep Inc., d/b/a OpticsML***

*Of Counsel:*

Bijal V. Vakil
White & Case LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306
(650) 213-0300
bijal@whitecase.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2021, I electronically filed the foregoing document with

the Clerk of the Court using the CM/ECF system. This document will be served on Defendants in

accordance with the Federal Rules of Civil Procedure.

*/s/ Eric H. Findlay*
Eric H. Findlay