IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PAIRPREP, INC. D/B/A OPTICSML, | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | CIVIL ACTION NO. 2:21-CV-00057-JRG |
| ASCENSION DATA AND ANALYTICS, LLC, REIDPIN LLC, ROCKTOP PARTNERS LLC, URSUS HOLDINGS LLC, | § § § § § § § | |
| *Defendants*. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Ascension Data & Analytics, LLC ("Ascension"), Reidpin LLC ("Reidpin"), Rocktop Partners, LLC ("Rocktop"), and Ursus Holdings, LLC's ("Ursus") (collectively, the "Defendants") First Amended Motion to Dismiss and to Compel Arbitration, or, Alternatively, to Stay This Matter, and Order Discovery (the "Motion to Compel Arbitration"). (Dkt. No. 26).  Having considered the Motion to Compel Arbitration, the subsequent briefing, and for the reasons set forth herein, the Motion to Compel Arbitration is **GRANTED** as set forth herein.

I. BACKGROUND

A. Factual Background

On February 6, 2017 Plaintiff Pairprep, Inc. d/b/a OpticsML ("Plaintiff" or "Pairprep") and Ascension entered into a Master Services Agreement (the "MSA" or "Agreement"). (Dkt. No. 17-1 at 1).  In the Agreement, Plaintiff agreed to provide Ascension with certain software development services to improve the data analytics services Ascension offered to financial, real estate, and legal markets.  (*Id.*).  The parties' accounts of their relationship after the Agreement was executed differ

dramatically. (*Compare* Dkt. No. 17 (Plaintiff's amended complaint) *with* Dkt. No. 26 ¶ 11 ("Defendants vigorously dispute the facts set forth in Plaintiff's Complaint, First Amended Complaint.")). One thing, however, is clear from the parties' briefing—the relationship was anything but smooth. After reviewing the pleadings before it, the Court outlines the following background that appears undisputed.

As is true with many master services agreements, this MSA contained a dispute resolution provision titled "Default; Mediation; Arbitration." (Dkt. No. 17-1 § 8). Relevant to the Motion to Compel Arbitration, the below provisions provide:

> (c) <u>Mediation</u>. In the event of any dispute, claim, or controversy arising out of, connected with or relating to this Agreement, which the parties are unable to resolve by negotiations between them, the parties agree to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Rules.
>
> (d) <u>Arbitration</u>. If the matter is not resolved within thirty (30) days after submission to mediation, the matter shall be resolved by binding arbitration administered and conducted under the Commercial Arbitration Rules of the American Arbitration Association and Title 9 of the United States Code. A judgment upon the arbitration award may be entered in any court having jurisdiction. Any arbitration hearing shall take place in Dallas, Texas. The prevailing party shall be entitled to reimbursement from the other party for costs, filing fees, arbitration filing fees, reasonable pretrial, trial and appellate attorney's fees, witness fees, expert fees and arbitration panel fees. Nothing in this Section, however, shall prevent either party from seeking equitable relief from a court of competent jurisdiction for the other party's breach of the Confidentiality provisions of this Agreement.

(*Id.* § 8(c)–(d)). The Agreement also contained a survival clause instructing that at least some provisions survived the termination of the Agreement:

> 12. **Survival**. All representations, warranties and covenants in this Agreement including, without limitation, the provisions relating to confidentiality will survive the terms of this Agreement.

(*Id.* § 12). The Agreement also notes that it is to "be governed by and construed in accordance with the laws of the State of Texas." (*Id.* § 13).

The parties do not appear to dispute that the MSA terminated on August 8, 2019. (Dkt. No. 17 ¶ 10; Dkt. No. 26 ¶ 14). After the Agreement was terminated in 2019, the parties began to dispute whether Plaintiff or Defendants owned the intellectual property produced by Plaintiff during the term of the parties' relationship. (*E.g.*, Dkt. No. 26-3 at 2–3; Dkt. No. 17 ¶¶ 10–13; Dkt. No. 30 at 2).

As part of that dispute, Plaintiff apparently invoked Section 8 of the MSA, which contains the mediation and arbitration provisions of the Agreement in a letter to Defendants:

> 4. Path Forward – Request for Mediation.
>
> We hope that the above clarifies the current situation. We continue to believe there is a path towards a negotiated solution. However, Optics hereby triggers the Mediation and Arbitration provisions in the Agreement. See Agreement Section 8(c)-(d).
>
> Nothing contained in this letter is intended to waive any rights, remedies, or recourses available to Optics under the Agreement or applicable law.
>
> Please contact the undersigned at (212) 804-8738 to discuss these matters further,
>
> Mark Schneiderman, Esq.
> General Counsel
> mark.schneiderman@albionriver.com

(Dkt. No. 26-3 at 3). According to Defendants, the parties mediated through the American Arbitration Association ("AAA"), but the mediation was unsuccessful. (Dkt. No. 26 ¶ 18). Then, Defendants filed a Demand for Arbitration with the AAA on December 23, 2020 (Dkt. No. 26 ¶ 19). Based on Defendants' First Amended Demand for Arbitration submitted with its Motion to Compel Arbitration (Dkt. No. 26-4), Ascension and its insurance company, Indian Harbor Insurance, initiated the arbitration against Plaintiff and its principals, Mr. Sean M. Lanning and Mr. John Michael Brozena III. (Dkt. No. 26-4 at 1–2, 12).

On February 22, 2021, counsel for Plaintiff and Messrs. Lanning and Brozena sent a letter to Defendants informing them that Plaintiff and its principals were unwilling to participate in the arbitration and contemporaneously filed the above-captioned litigation. (Dkt. No. 26-5 at 1–2).

### B.     Procedural Background

Plaintiff filed the above-captioned action on February 22, 2021 accusing Defendants of trade secret misappropriation, breach of contract, tortious interference, and fraud and misrepresentation, *inter alia*.[1] (Dkt. No. 1).  Plaintiff's original complaint did not specifically allege a breach of Section 7 of the MSA (the "Confidentiality Provision"). (*Id.*).  The allegations associated with Plaintiff's breach of contract claim in the original complaint focused on Section 6 of the MSA, which is titled "Intellectual Property." (*Id.* ¶¶ 139–46).  On March 26, 2021, Defendants filed a motion seeking to compel Plaintiff to arbitrate the present dispute, among other relief. (Dkt. No. 8).  On May 13, 2021, Plaintiff filed an amended complaint—after both Plaintiff and Defendants had filed their response and reply briefs, respectively, to Defendants' original motion to compel arbitration (Dkt. No. 17).  Plaintiff subsequently amended its complaint and added specific allegations and claims regarding Defendants' breach of the Confidentiality Provision and requested equitable and injunctive relief resulting from said breach. (*Id.* ¶¶ 147–57).  Defendants then filed this instant Motion to Compel Arbitration asking the Court to dismiss the action and compel arbitration or stay the action pending arbitration discovery. (Dkt. No. 26 at 1–2).

## II.     LEGAL STANDARD

"[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).  "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id*.  The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so

---

[1] Pairprep is the only named plaintiff in this litigation—Messrs. Lanning and Brozena are not parties to this litigation. Further, Ascension's insurance company, Indian Harbor, is not a party to this action.

long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id*. at 530.  An arbitration agreement that incorporates the AAA Rules "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012).

"[T]his circuit recognizes that district courts have discretion to dismiss with prejudice rather than stay litigation pending arbitration."  *Rainey v. Citigroup, Inc.*, 779 F. App'x 258, 259 n.1 (5th Cir. 2019).  Dismissal is proper "when all of the issues raised in the district court must be submitted to arbitration."  *Adam Techs. Int'l, S.A. de C.V. v. Sutherland Global Servs., Inc.,* 729 F.3d 443, 447 n.1 (5th Cir. 2013).

### III.     DISCUSSION

#### A.     Existence of a Valid Arbitration Agreement Between Plaintiff and Defendants

The first question before this Court is whether a valid arbitration agreement exists between Plaintiff and Defendants.

Defendants argue that there is a valid and enforceable arbitration agreement between Ascension and Plaintiff under Section 8(d) of the MSA.  (Dkt. No. 26 ¶¶ 30–31).  Defendants further argue that Plaintiff has previously acknowledged the existence of a valid arbitration agreement by "invok[ing] the very arbitration agreement it now seeks to avoid."  (*Id.* ¶ 30) (citing Dkt. No. 26-3 at 3).

Plaintiff responds that there is no enforceable arbitration agreement because the MSA was unilaterally terminated by Defendants on August 8, 2019.  (Dkt. No. 30 at 12).  Plaintiff argues that only certain provisions survived the termination of the MSA—the Confidentiality Provision and terms related to intellectual property (Sections 6 and 7, respectively).  (*Id.* at 3–4, 12–13). Plaintiff concludes that because Section 8 (the mediation and arbitration provision) is not expressly

5

named in the survival clause as surviving the Agreement, it did not survive the August 8, 2019 termination by Defendants.  (*Id.* at 15).

Determining the validity of agreements to arbitrate is done by application of ordinary state contract law principles.  *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006).  The well-established elements of a valid contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding.  *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. Ct. App. 2002).  "An arbitration agreement contained within a contract survives the termination or repudiation of the contract as a whole."  *Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 854 (Tex. Ct. App. 2012).

The Court is not persuaded by Plaintiff's reliance on cited cases which analyzed forum selection clause issues rather than arbitration provisions.  (Dkt. No. 30 at 13–15) (citing *Weatherford Int'l, LLC v. Binstock*, 452 F. Supp. 3d 561 (S.D. Tex. 2020); *TSI USA, LLC v. Uber Techs., Inc.*, No. 3:16-cv-2177, 2017 WL 106835 (N.D. Tex. Jan. 11, 2017)).  Texas courts have concluded that arbitration provisions survive a contract.  *Cleveland Constr.*, 359 S.W.3d at 854; *Henry v. Gonzalez*, 18 S.W.3d 684, 690 (Tex. Ct. App. 2000); *In re Koch Indus., Inc.*, 49 S.W.3d 439, 445 (Tex. Ct. App. 2001).  As guided by Texas law, the Court finds that the arbitration provision at issue survived the August 8, 2019 termination of the MSA.

The Court also is not persuaded that the Agreement's survival clause is as narrow as Plaintiff suggests.  In fact, the survival clause is extremely broad and commands that "***[a]ll representations, warranties and covenants in this Agreement*** including, ***without limitation***, the provisions relating to confidentiality ***will survive the terms of this Agreement***."  (Dkt. No. 17-1 § 12) (emphasis added).  The Court finds that the plain language of the parties' covenant under

6

Section 8 to mediate and arbitrate "any dispute, claim, or controversy arising out of, connected with or relating to this Agreement" falls within this survival clause.

Finally, Plaintiff's own conduct recognized that Section 8 survived termination. Indeed, seven days after Ascension's unilateral termination notice and three days before the Agreement was set to terminate based on that notice, Plaintiff invoked the mediation and arbitration provision. (Dkt. No. 17-3 at 3). Defendants claim, and Plaintiff does not dispute, that Plaintiff participated in the mediation required by Section 8. (Dkt. No. 12 ¶ 27).

Accordingly, the Court finds that under Texas law, there is a valid and enforceable arbitration provision.

### B.   Arbitrability of the Dispute Between Plaintiff and Defendants[2]

The next question for this Court to answer is whether Plaintiff and Defendants agreed to arbitrate arbitrability.

Defendants argue that the parties agreed to arbitrate arbitrability. Defendants contend that because Section 8 incorporates the AAA rules, the parties agreed to arbitrate the threshold question of arbitrability. (Dkt. No. 26 ¶ 24) (citing *Archer & White Sales, Inc v. Henry Schein, Inc.*, 935 F.3d 274, 279 (5th Cir. 2019)); (Dkt. No. 17-1 § 8).

Plaintiff does not dispute that the MSA contains an arbitration provision and that the provision references the AAA rules. (Dkt. No. 30 at 8). Plaintiff argues, however, that the provision contains a carveout for claims seeking equitable relief for breaches of the Confidentiality Provision. (*Id.*). Plaintiff contends that because it has accused Defendants of breaching the

---

[2] In their briefing, Plaintiff and Defendants dispute the arbitrability of claims by and/or against Messrs. Lanning and Brozena and Indian Harbor. As stated above, none of these persons or entities are a party in the above-captioned case. Accordingly, the Court reaches no determination as to the arbitrability of any claims involving persons or entities which are not members of this litigation or signatories to the MSA.

Confidentiality Provision, its case is similar to *Archer*. (*Id.* at 8–10). Plaintiff provides the below comparison between the terms in *Archer* and this case:

| **Dealer Agreement between Archer and Pelton & Crane;** *Archer,* **935 F.3d at 279.** | **Section 8(d) of the Master Service Agreement between Defendants and Plaintiff** |
|---|---|
| <u>Disputes</u>. This Agreement shall be governed by the laws of the State of North Carolina. Any dispute arising under or related to this Agreement (==except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of Pelton & Crane==), shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association [ (AAA) ]. The place of arbitration shall be in Charlotte, North Carolina. | (d)   <u>Arbitration</u>. If the matter is not resolved within thirty (30) days after submission to mediation, the matter shall be resolved by binding arbitration administered and conducted under the Commercial Arbitration Rules of the American Arbitration Association and Title 9 of the United States Code. . . . ==Nothing in this Section, however, shall prevent either party from seeking equitable relief from a court of competent jurisdiction for the other party's breach of the Confidentiality provisions of this Agreement.== |

(Dkt. No. 30 at 9) (highlighting in Plaintiff's briefing).

      The Court is not persuaded that the MSA arbitration provision is similar, in either form or substance, to that in *Archer*. Indeed, Plaintiff's own comparison, reproduced above, illustrates the key difference—the ordering of the carveout. In *Archer*, "actions seeking injunctive relief and disputes related to trade marks, trade secrets, or other intellectual property" were ***expressly excluded*** from the types of disputes incorporating AAA rules. *Archer*, 935 F.3d at 279. In *Archer*, the Fifth Circuit recognized that this distinction was the critical difference from its prior holding in *Crawford Professional Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249 (5th Cir. 2014). *Archer*, 935 F.3d at 281 ("But that is precisely the point—the placement of the carve-out here is dispositive."). *Archer* held that because the AAA rules were incorporated "for all disputes ***except*** those under the carve-out," arbitrability was not delegated for claims falling within the carveout. *Id.* at 281–82. The *Archer* court recognized that *Crawford*'s agreement was distinguishable because it contained a "carve-out that nothing in the arbitration provision 'shall

8

prevent either party from seeking injunctive relief for breach of the Agreement.'" *Id.* at 280. This carveout did not exclude any causes of action with respect to the agreement's incorporation of the AAA rules. *Id.* The Court finds that under *Archer* and *Crawford*, Plaintiff and Defendants have delegated the issue of arbitrability to the arbitrator. Like *Crawford*, the carveout in the arbitration provision of the MSA does not exclude any claims or causes of action with respect to the incorporation of the AAA rules. Rather, the carveout merely ***permits*** the movant to seek equitable relief in court for certain breaches. This is precisely the type of carveout that the Fifth Circuit has found to be "clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability, and the Fifth Circuit affirmed this understanding in its discussion of *Crawford* in *Archer*. *Id.*

Accordingly, the Court finds that Plaintiff and Defendants agreed to arbitrate arbitrability.

### C.     Jurisdiction over Plaintiff's Demands for Equitable Relief

"[W]hen claims are properly referable to arbitration … the court shall stay the trial of the action until the arbitration is complete." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (citing 9 U.S.C. § 3). Dismissal—rather than a stay—may be appropriate "when ***all*** of the issues raised in the district court must be submitted to arbitration." *Id.* The Court is convinced that retaining jurisdiction over Plaintiff's demand for equitable relief against Defendants for breach of the Confidentiality Provision may serve a purpose. Plaintiff's claim for Defendants' breach of the Confidentiality Provision seeks, among other relief, an injunction related to the future use and dissemination of the allegedly confidential information. (Dkt. No. 17 ¶ 156). Accordingly, if Plaintiff's breach of contract claim is determined to be arbitrable and is decided in Plaintiff's favor, Plaintiff may wish to pursue equitable relief against Defendants in this Court. Plaintiff has not moved for a temporary restraining order or a preliminary injunction related to its demand for equitable relief. Accordingly, the Court exercises its discretion to retain

jurisdiction over and stay Plaintiff's demand for equitable relief regarding its claim against Defendants for breach of the Confidentiality Provision.

## IV.   CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants' Motion to Compel Arbitration with respect to Defendants' request that the parties submit to binding arbitration under the MSA. All other relief requested in the Motion to Compel Arbitration not expressly granted herein is **DENIED**.

## V.   ORDER

It is hereby **ORDERED** that Plaintiff's claims against Defendants are **STAYED**, and the parties shall submit to binding arbitration pursuant to Section 8 of the MSA. The parties are directed to promptly and jointly notify the Court by written Notice filed herein and within 72 hours when the arbitration process is complete or otherwise brought to a close.

**So ORDERED and SIGNED this 9th day of September, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE